William J. SPRINGER, Petitioner,

v.

DISTRICT OF COLUMBIA DEPART-
MENT OF EMPLOYMENT SER-
VICES, Respondent

Delta Installation Group and Mont-
gomery Mutual Insurance Com-
pany, Intervenors.

Michael Strickland, Petitioner,

v.

District of Columbia Department
of Employment Services,
Respondent.

Jevic Transportation, Inc., and Lindsey
Morden Claims Management,
Intervenors.

Nos. 97–AA–8, 97–AA–557
and 97–AA–1714.

District of Columbia Court of Appeals.

Argued Dec. 11, 1998.

Decided Dec. 30, 1999.

Benjamin T. Boscolo, Greenbelt, MD, with whom William A. Butler, Washington, DC, and Andrew S. Kasmer, Greenbelt, MD, were on the briefs, for petitioners. Frank R. Kearney also entered an appearance for petitioner Springer.

Michael D. Dobbs, with whom Ann Wittik Bravmann, Bowie, MD, was on the brief, for intervenors in Nos. 97–AA–8 and 97–AA–557.

Forest A. Nester, Timonium, MD, for intervenors in No. 97–AA–1714.

Jo Anne Robinson, Principal Deputy Corporation Counsel, and Charles L. Reischel, Deputy Corporation Counsel, filed in each case a statement in lieu of brief for respondent.

Before TERRY, STEADMAN, and REID, Associate Judges.

TERRY, Associate Judge:

These consolidated cases, unrelated on their facts but presenting the same legal issue, arise out of on-the-job injuries suffered by petitioners William Springer and Michael Strickland while working in the

District of Columbia. At the time of their respective injuries, both petitioners lived outside the District and worked for companies located outside the District. Both received and accepted compensation for their injuries, which their employers paid voluntarily under the workers' compensation laws of Maryland and New Jersey, respectively. After receiving these payments, both petitioners filed workers' compensation claims with the District of Columbia Department of Employment Services ("DOES"). Hearing examiners denied petitioners' claims under D.C.Code § 36–303(a–1) (1997), which prohibits an employee from receiving workers' compensation under the District of Columbia Workers' Compensation Act, D.C.Code §§ 36–301 *et seq.* (1997) ("WCA"), if the employee has "at any time" received compensation under the laws of *any other* state for the same injury. The Director of DOES affirmed the denials. On appeal, petitioners assert that the Director incorrectly construed D.C.Code § 36–303(a–1) as not including a requirement that an employer notify an injured employee of his or her rights under the WCA before the preclusive effect of the statute is triggered. They argue that their claims were improperly denied because their employers did not notify them (1) that they were being paid under the laws of jurisdictions other than the District of Columbia, (2) that they potentially had rights to compensation under the WCA, and (3) that they would lose those rights if they accepted the voluntary payments. Because we conclude that the Director's interpretation of section 36–303(a–1) is reasonable, we affirm.

## I

### A. *Springer's Claim*

At the time of his injury, petitioner Springer worked for Delta Installation Group (Delta), a Maryland company, as a modular furniture installer. On March 4, 1993, while traveling to a Delta work site with co-workers, Springer was injured when a car collided with a van in which he was a passenger. The accident occurred on Interstate Route 295 in the District of Columbia, near the Pennsylvania Avenue exit. Springer was taken to a hospital, where he was treated for his injuries and released. He returned to light-duty work the next day.

Four days after the accident, Delta filed a report of Springer's injuries with the Maryland Workers' Compensation Commission ("MWCC"), as required by Maryland law. The report was forwarded to Montgomery Mutual Insurance Company, Delta's insurer, which accepted Springer's claim as compensable at the time the report was filed.

After nearly a month of light-duty work, Springer contacted Ted Linzey, a senior adjuster with Montgomery Mutual, to notify him that he could not continue working as a result of his injuries. Because Springer anticipated missing more than three days of work, Linzey instructed him that he would need to file a claim with the MWCC in order to receive workers' compensation benefits. Mr. Linzey sent Springer the requisite form, which Springer completed and returned. Linzey then filed the completed form with the MWCC on April 13, 1993.

The MWCC awarded Springer workers' compensation benefits and ordered Delta to pay Springer temporary total disability ("TTD") benefits at the rate of $280 per week, beginning on April 11, 1993. In accordance with the order, Montgomery Mutual paid Springer TTD benefits from April 11 to July 5, 1993.[1] Springer received and cashed the checks for the TTD benefits.

---

1. Because Montgomery Mutual accepted Springer's injury as compensable, it volun-

tarily paid Springer TTD benefits before the MWCC ordered it to do so on June 8, 1993.

At the request of Montgomery Mutual, Dr. H.S. Palba conducted an independent medical examination of Springer in June 1993 and concluded that Springer did not have a permanent injury. Springer's treating physician, Dr. Edwin C. Fulton, disagreed. He told Springer that his injuries were permanent and that he had a five percent impairment of his body as a whole. On August 17 Linzey received a letter from Springer relating Dr. Fulton's assessment of the injury as permanent. In the letter, Springer stated, "I am at this time asking for compensation for my injury and that this be put on a permanent status." Springer delivered a copy of Dr. Fulton's report to Mr. Linzey.

On the basis of Dr. Fulton's report, Montgomery Mutual offered to pay Springer $2,355.00, *i.e.,* $94.20 per week for twenty-five weeks, as compensation for a permanent injury. The offer was based on Maryland law, which provides for a disability rating of the whole body when an injury occurs to a non-scheduled body member, such as the neck or back. MD. CODE ANN., LABOR & EMPLOYMENT § 9–627(k) (1991). Linzey explained to Springer that he would receive only one payment based on the permanent disability, but that it would not preclude his right to other medical payments and was not final. Linzey prepared the settlement papers and sent them to Springer with instructions to deliver them to the MWCC. Springer, however, never filed the settlement papers; instead, he wrote Linzey a letter requesting that he be reinstated on TTD.

On October 28, 1993, Springer filed a claim in the District of Columbia with DOES, seeking TTD benefits from July 6, 1993, to the present and continuing. Six months later he withdrew the claim he had filed with the MWCC. Following a hearing before a hearing examiner in June 1994, another hearing examiner [2] issued a compensation order on September 26, 1996, denying Springer's claim under the WCA. She concluded that, in light of D.C.Code § 36–303(a–1), Springer was barred from receiving compensation under the WCA. The examiner specifically found that Springer had suffered a compensable, work-related injury and that Delta had "made voluntary payments of temporary total disability benefits to claimant from April 11, 1993, through July 5, 1993." She also found that Springer, through Linzey, had filed a claim with the MWCC and had been awarded TTD benefits and necessary medical expenses as a result of his injury. She concluded that Springer's "receipt of disability benefits from MWCC precludes him from receiving any benefits under [the WCA]." The Director later affirmed the examiner's decision.

### B. Strickland's Claim

When petitioner Strickland was injured, he was employed as a truck driver for Jevic Transportation, Inc. (Jevic), a New Jersey company. His duties included loading, transporting, delivering, and occasionally unloading freight. On August 5, 1996, Strickland delivered a load of pamphlets to an office in the District of Columbia. In the process of unloading the boxes from the truck, Strickland injured his back. The following day, at the direction of his supervisors at Jevic, Strickland

---

**2.** The original hearing examiner resigned from her position on April 7, 1995, before issuing a compensation order. Neither party, however, objected to the issuance of a compensation order by a different examiner, and the substitution has not been challenged here.

drove to Concord, North Carolina, where he received treatment.

On August 8 Strickland called Kevin Long, Jevic's insurance manager, to report that he had suffered a work-related injury. Long obtained information about the injury from Strickland, explaining that it would be used to generate and file an injury report, thereby enabling Strickland to receive compensation for his injury under the New Jersey Workers' Compensation Act. After the claim form was completed, Long sent it to Jevic's insurance administrator, Lindsey Morden Claims Management, which forwarded it to the New Jersey Division of Workers' Compensation.

Some time after his telephone conversation with Long, Strickland received in the mail from Jevic a check for $548.57. The check was dated August 27, 1996, and indicated that it represented temporary total disability payments from August 8 to August 15, 1996.[3] The check differed from his usual paycheck both in amount (his average weekly wage was normally between $1,200 and $1,500) and in method delivered (his paycheck was usually deposited directly into his bank account); nevertheless, he cashed it. At the time he received the check, Strickland had not filed a workers' compensation claim in any jurisdiction.

Thereafter, however, Strickland filed a claim in the District of Columbia with DOES, seeking TTD compensation bene-

fits from August 5, 1996, to the present and continuing, and payment of related medical expenses. After a hearing in April 1997, a hearing examiner denied Strickland's claim on the basis of D.C.Code § 36–303(a–1). The examiner found that although Strickland's injury had arisen out of and in the course of his employment and that his claim had been timely filed in the District of Columbia, Jevic had accepted Strickland's claim for a work-related injury on August 5, 1996, and had voluntarily paid him workers' compensation benefits under New Jersey workers' compensation laws before Strickland filed his claim here under the WCA. He concluded that because Strickland had already received benefits in accordance with New Jersey law, his claims under the WCA were barred by section 36–303(a–1). The Director affirmed the hearing examiner's decision.

## II

### A. *Receipt of Compensation*

Strickland initially contends that D.C.Code § 36–303(a–1) is not applicable to him because he did not receive compensation "under the workers' compensation law" of New Jersey.[4] He asserts that he never availed himself of New Jersey law because he never filed a claim with the New Jersey Division of Workers' Compensation and was never informed that he was receiving compensation under New Jersey law.[5] Implicitly, he challenges the hearing examiner's finding that Jevic accepted Strickland's claim of a work-related injury on August 5, 1996, and "voluntarily paid

---

**3.** Specifically, the check read "TTD 8/8–8/15/96 @ $480.00 per week, 1–1/7 week lost wages."

**4.** Section 36–303(a–1) prohibits an employee from receiving benefits under the WCA if the employee has received "compensation under the workers' compensation law of any other state for the same injury or death."

**5.** Springer, on the other hand, does not and cannot dispute that, before filing his claim

with DOES, he received compensation under the workers' compensation law of Maryland. After his employer filed the claim and paid for the initial medical expenses resulting from his accident, Springer filled out and returned an employee claim form for filing with the MWCC. He received and deposited checks for TTD benefits for the period from April 11 through July 8, 1993, and the MWCC specifically awarded Springer TTD benefits beginning April 11, 1993.

him workers' compensation benefits pursuant to the laws of the state of New Jersey." [6]

■ We review a factual finding made by DOES to determine whether there is substantial evidence to support it. *E.g., Sturgis v. District of Columbia Dep't of Employment Services*, 629 A.2d 547, 551 n. 3 (D.C.1993); *Dell v. Department of Employment Services*, 499 A.2d 102, 106–107 (D.C.1985). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938).

■ In this case there was substantial evidence that Strickland received workers' compensation benefits under New Jersey's workers' compensation law. Jevic's insurance manager, Kevin Long, testified that during their conversation about Strickland's work-related injury, he told Strickland that information he acquired during the conversation would be used to generate a report of the injury so that Strickland could receive workers' compensation benefits under New Jersey law. Strickland acknowledged that he received and accepted the benefits that Jevic voluntarily made, and that he did not file a claim in the District of Columbia under the WCA until after he received those benefits.

Furthermore, New Jersey law permits the voluntary payment of workers' compensation benefits by employers. *See* N.J. Rev. Stat. § 34:15–16 (1998). When such voluntary payments are made, they constitute a "payment of compensation" under the New Jersey statute, so long as their payment would have been mandated by the statute. *Sheffield v. Schering Plough Corp.*, 146 N.J. 442, 454, 680 A.2d 750, 756 (1996). There is no dispute that the payments Jevic made to Strickland would have been required under the New Jersey

workers' compensation statute. We conclude, therefore, in light of the evidence presented at the hearing as well as New Jersey law, that Strickland received benefits under the workers' compensation law of New Jersey.

## B. D.C.Code § 36–303(a–1)

Having established that both petitioners received benefits under the workers' compensation laws of states other than the District of Columbia, we turn to their principal argument. They assert that their claims under the WCA should not be barred by D.C.Code § 36–303(a–1) because they did not make knowing and informed waivers of those claims when they accepted their employers' voluntary payments of benefits. In essence, petitioners assert that D.C.Code § 36–303(a–1) should be interpreted to require employers to inform employees of their rights under the WCA before the preclusive effect of the provision applies. They claim that the Director's construction of section 36–303(a–1) as not including such a notice requirement was unreasonable.

■ We generally afford "considerable deference to an administrative agency's interpretation of a statute that it administers." *Long v. District of Columbia Dep't of Employment Services*, 717 A.2d 329, 331 (D.C.1998) (citations omitted). Such deference is not warranted when the agency's interpretation is "plainly wrong or inconsistent with the legislature's intent," *Jackson v. District of Columbia Police & Firefighters Retirement & Relief Board*, 717 A.2d 904, 906 (D.C.1998) (citation omitted), or when "the record is barren of any indication that the agency gave any consideration at all to the statutory language or to the structure or purpose of the provisions which were ostensibly being construed." *Coumaris v. District of Columbia Alcohol-*

---

6. To the extent that Strickland argues that he did not receive compensation under the workers' compensation laws of New Jersey because he was not notified that he was being paid pursuant to those laws, that argument is addressed hereafter in Part B.

*ic Beverage Control Board,* 660 A.2d 896, 900 (D.C.1995); *see also Sibley Memorial Hospital v. District of Columbia Dep't of Employment Services,* 711 A.2d 105, 108 (D.C.1998). But when the agency's—in this case, the Director's—interpretation is reasonable in light of the language and purpose of the statute, "we will sustain it even if there are other constructions which may be equally reasonable." *National Geographic Society v. District of Columbia Dep't of Employment Services,* 721 A.2d 618, 620 (D.C.1998).

■■■ "It is a basic rule of statutory construction that courts [and agencies] must follow the plain and ordinary meaning of a statute because that is the meaning intended by the legislature." *Guerra v. District of Columbia Rental Housing Comm'n,* 501 A.2d 786, 789 (D.C.1985) (citations omitted). Therefore, when interpreting a statute, we begin with "[t]he words of the statute," construing them "according to their ordinary sense and with the meaning commonly attributed to them." *Davis v. United States,* 397 A.2d 951, 956 (D.C.1979) (citation omitted); *accord, e.g., Peoples Drug Stores, Inc. v. District of Columbia,* 470 A.2d 751, 753 (D.C.1983) (en banc). "The burden on a litigant who seeks to disregard the plain meaning of the statute is a heavy one, and '[t]his court will look beyond the ordinary meaning of the words of a statute only where there are persuasive reasons for doing so.'" *National Geographic,* 721 A.2d at 620 (citation omitted).

■■■ D.C.Code § 36–303(a–1) provides in its entirety: "No employee shall receive compensation under this chapter and at any time receive compensation under the workers' compensation law of any other state for the same injury or death." There is, obviously, no notice requirement in the language of the statute itself. The inclusion of notice requirements in other parts of the WCA strongly suggests that the

lack of such a requirement in section 36–303(a–1) was not accidental. *See, e.g.,* D.C.Code § 36–313(a) (notice of injury or death must be given within thirty days); D.C.Code § 36–314(a) (time for filing a claim shall not begin to run until the employee is aware of the relationship between the injury or death and the employment). Thus we conclude, considering simply the language of the statute, that the Director's interpretation of section 36–303(a–1) is reasonable.

But that does not end our discussion. Despite the obvious absence of an explicit notice requirement, the Director construed nearly identical language in a prior statute as including such a requirement in *Russell v. Washington Metropolitan Area Transit Authority,* Dir. Dkt. 87–51, H & AS No. 84–358, OWC No. 0041940 (June 30, 1986). The Director held in *Russell* that before an employee could be barred from receiving benefits under the WCA, the employer was required to show that

> [the] employee was informed of (1) the jurisdiction under which he was being paid, (2) the right to receive benefits under District law if the employment was principally localized in the District at the time of the injury and (3) the extinguishment of any right to District benefits upon acceptance of payments under the laws of another jurisdiction.

*Id.* at 4.

In *Russell* the employer made voluntary payments of TTD benefits under the Virginia workers' compensation statute to the injured employee, a radio repairman. After accepting the benefits, the employee filed a workers' compensation claim in the District of Columbia under the WCA. The hearing examiner held that Russell's claim under the WCA was barred by D.C.Code § 36–303(a)(1) (1988), the predecessor of the current section 36–303(a–1). Section 36–303(a)(1) provided: "No employee shall receive compensation under this chapter

and at the same time receive compensation under the workers' compensation law of any other state for the same injury or death." The Director reversed. He interpreted the statute to require employers to inform their employees of the possibility of jurisdiction in the District of Columbia before voluntary payments would be considered a bar to compensation under the WCA. The Director concluded: "To permit an employer to prevail although failing to inform the employee of his rights would be to contravene the spirit, if not the letter, of the Act." *Id.* at 4.

In so ruling, the Director relied on two cases from other jurisdictions, *Thomas v. Transport Insurance Co.*, 532 S.W.2d 263 (Tenn.1976), and *Stolpa v. Swanson Heavy Moving Co.*, 315 N.W.2d 615 (Minn.1982). In *Thomas* the court, considering whether the claimant was precluded from seeking workers' compensation benefits under Tennessee law after having accepted voluntary payments of benefits under Arkansas law, concluded that "if the employee, while seriously injured and disabled, was simply sent checks by a workmen's compensation carrier, with no information as to the nature of the benefits being received, he may not be so precluded." 532 S.W.2d at 267. Likewise in *Stolpa* the court held that "an injured employee, in spite of his acceptance of compensation voluntarily paid by a compensation insurer pursuant to the laws of another state, [was permitted] to make an affirmative election of Minnesota coverage ...." 315 N.W.2d at 617.[7] Adopting the reasoning of *Thomas* and *Stolpa*, the Director in *Russell* said it was

"axiomatic that the exercise of an election of remedies requires knowledge of the right to choose." *Russell* at 3. He therefore placed on the employer the burden of informing the employee of that right. The Director noted that, under the WCA, DOES has a duty to apprise an injured employee of his rights and obligations, but that this duty does not arise until the employer files a report of the injury with the agency. *See* D.C.Code § 36–332(g) (1997). Because it is the employer's duty to initiate the process for compensation that ultimately notifies the employee of his rights under the WCA, the Director reasoned that the employer should bear the burden of showing that the employee knew about those rights before voluntary benefits paid under the laws of another state could extinguish them.

In 1991, however, D.C.Code § 36–303 was amended to prohibit an employee from receiving benefits under the WCA if that employee has received compensation "at any time" under the laws of another state for the same injury. Section 36–303 otherwise remained unchanged except for the renumbering of some of its subsections. Nevertheless, in the *Springer* decision which we are here reviewing,[8] the Director concluded that the 1991 amendment abolished the notice requirement that had been established in the *Russell* decision.

We note that "agencies, like courts, must and do favor a policy of *stare decisis* unless unusual circumstances intervene." *Reichley v. District of Columbia Dep't of Employment Services*, 531 A.2d

---

7. The Minnesota statute at issue in *Stolpa* differed significantly from both D.C.Code § 36–303(a)(1) and its present successor. It provided:

 If an employee who regularly performs the primary duties of his employment outside of this state or is hired to perform the primary duties of his employment outside of this state, receives an injury within this state in the employ of the same employer, such injury shall be covered within the provisions of this chapter if the employee

chooses to forego any workers' compensation claim resulting from the injury that he may have a right to pursue in some other state.

MINN. STAT. § 176.041, subd. 4 (1980) (emphasis added).

8. *Springer v. Delta Installation Group*, Dir. Dkt. 97–8, H & AS 94–206, OWC 260426, at 3 (July 1, 1997).

244, 247 (D.C.1987); *accord, Washington Metropolitan Area Transit Authority v. District of Columbia Dep't of Employment Services,* 683 A.2d 470, 476 (D.C.1996). Nonetheless, "*stare decisis* has traditionally been thought to be a principle of palpably less rigorous applicability in the field of administrative law than elsewhere .…" *FTC v. Crowther,* 139 U.S.App.D.C. 137, 140, 430 F.2d 510, 513 (1970). An agency has the "right to modify or even overrule an established precedent or approach, for an administrative agency concerned with the furtherance of the public interest is not bound to rigid adherence to its prior rulings." *Columbia Broadcasting System, Inc. v. FCC,* 147 U.S.App.D.C. 175, 183, 454 F.2d 1018, 1026 (1971) (footnote omitted). But when an agency departs from its prior practice or rule, it "must supply a reasoned analysis indicating that prior policies and standards are being deliberately changed, not casually ignored." *Watergate. East, Inc. v. Public Service Comm'n,* 665 A.2d 943, 947 (D.C.1995) (quoting *Greater Boston Television Corp. v. FCC,* 143 U.S.App.D.C. 383, 394, 444 F.2d 841, 852 (1970), *cert. denied,* 403 U.S. 923, 91 S.Ct. 2233, 29 L.Ed.2d 701 (1971)); *see also Columbia Broadcasting System,* 147 U.S.App. D.C. at 183, 454 F.2d at 1026 ("when an agency decides to reverse its course, it must provide an opinion or analysis indicating that the standard is being changed and not ignored, and assuring that it is faithful and not indifferent to the rule of law").

In *Springer* the Director explicitly relied on the reasoning of *Rush v. Washington Metropolitan Area Transit Authority,* H & AS No. 94–2 (August 23, 1995), in which a DOES hearing examiner specifically held that the 1991 amendment to D.C.Code § 36–303 overruled *Russell. Id.* at 6. *Rush* involved an employee who, like the claimant in *Russell,* was injured on the job and received a voluntary payment of benefits under the workers' compensation law of Virginia before filing a workers' compensation claim in the District of Columbia with DOES. The hearing examiner decided that Rush's claim was barred by the newly amended section 36–303(a–1). Although there was some indication that Rush actually had received notice as required by *Russell,* the examiner held that Rush's claim was barred regardless of whether he had notice. *Id.* In addition to the changes in the language of the statute, the hearing examiner relied on legislative history, particularly the Committee Report from the Council of the District of Columbia which accompanied the 1991 amendments, to support his decision. The Report showed an intent by the Council to decrease the cost of doing business in the District so as to make it competitive with surrounding jurisdictions, a policy that this court had previously approved in *Lee v. District of Columbia Dep't of Employment Services,* 509 A.2d 100, 104 (D.C.1986). *See Rush* at 5.[9]

---

**9.** The hearing examiner in *Rush* quoted the following excerpts from the Committee Report:

[T]here are provisions in the legislation as introduced which the Committee has determined would disrupt the stable operation of the District's workers' compensation program and increase cost to a level which would potentially place the District, once again, at a competitive disadvantage with the surrounding jurisdictions of Maryland and Virginia. The District cannot afford the flight of businesses from the District, particularly in light of the District's current financial status.

✻ ✻ ✻ ✻ ✻ ✻ .

… [I]t is expected that this change without other counterbalancing changes would increase the cost of doing business in the District. However, the Committee is recommending the adoption of a cost control measure … which is expected to control, if not lower, workers' compensation costs in the District.

COUNCIL OF THE DISTRICT OF COLUMBIA, COMMITTEE ON HOUSING AND ECONOMIC DEVELOPMENT, REPORT ON THE "DISTRICT OF COLUMBIA WORKERS' COMPENSATION EQUITY AMENDMENT ACT OF 1990," Bill No. 8–74, at 12, 15 (July 6, 1990).

Given the express legislative intent, the examiner held that the amendment to section 36–303 was designed not only to foreclose the receipt of workers' compensation in more than one jurisdiction for the same injury but also to eliminate the notice requirement established in *Russell.*

 The Director's decision in *Springer* adopted the reasoning set forth in *Rush* nearly verbatim. It interpreted

> the post-amendment language of § 36–303 [ (a–1) ] to afford an immediate remedy to the injured worker and decrease the costs of doing business in the District by extending and broadening the bar against the injured worker recovering benefits in more than one jurisdiction for the same injury.... Such interpretation maintains conformity with the statutory construction adopted by the D.C. Court of Appeals without compromising the humanitarian purposes of the Act.

*Springer* at 3 (citing *Lee,* 509 A.2d at 104). The Director specifically cited and discussed *Russell* in her opinion, thus showing that she was aware of its existence and its value as precedent.[10] She explicitly held that *Russell* had been overruled by the enactment of D.C.Code § 36–303(a–1), which amended the prior statute by adding the words "at any time." The decision demonstrates that the Director did not ignore past decisions, but chose to change the DOES interpretation of the statute in a manner entirely consistent with controlling case law.

### III

Given the language of the statute and its legislative history, we hold that the Director's interpretation of D.C.Code § 36–

303(a–1) is reasonable and furthers the policy of the legislation. Although the *Springer* decision overruled the previous interpretation of that statute's predecessor, the Director provided a sufficiently "reasoned analysis indicating that prior policies and standards were being deliberately changed, not casually ignored." *Greater Boston,* 143 U.S.App. D.C. at 394, 444 F.2d at 852. Accordingly, the Director's decisions in both cases are

*Affirmed.*

---

10. Notably, the Director's decision in *Strickland v. Jevic Transportation, Inc.,* Dir. Dkt. No. 97–55, H & AS No. 97–19, OWC No. 505930 (October 15, 1997), makes no mention of *Russell.* However, since the *Strickland* decision was issued three months after *Springer* and is entirely consistent with it, we may reasonably conclude that the Director relied on *Springer* in deciding *Strickland.*