The WASHINGTON POST

and

Gallagher Bassett Services, Petitioners,

v.

DISTRICT OF COLUMBIA DEPARTMENT OF EMPLOYMENT SERVICES, Respondent.

Steven Malik, Intervenor.

No. 02–AA–613.

District of Columbia Court of Appeals.

Argued April 23, 2003.
Decided May 29, 2003.

---

William H. Schladt, Gaithersburg, MD, for petitioners.

Allen J. Lowe for intervenor.

Arabella W. Teal, Interim Corporation Counsel, and Charles L. Reischel, Deputy Corporation Counsel, filed a statement in lieu of brief for respondent.

Before WAGNER, Chief Judge, FARRELL, Associate Judge, and NEBEKER, Senior Judge.

FARRELL, Associate Judge:

In 1999 and 2000, petitioners The Washington Post and its third-party insurance administrator, Gallagher Bassett Services (hereafter collectively "The Post"), made what purported to be voluntary workers' compensation payments to claimant/intervenor Malik (hereafter "Malik") under Virginia compensation law. Malik disagreed with the characterization (and computation) of the payments as made under Virginia law, believing that his work-related injuries were a recurrence of injuries for which The Post had previously compensated him under the District of Columbia's (somewhat more generous) Workers' Compensation Act (WCA). He therefore applied to the District of Columbia Department of Employment Services (DOES) for benefits amounting to the difference between what The Post had paid him in 1999 and 2000 and what he would be entitled to under District law. The Post opposed the claim by relying principally on D.C.Code

§ 32–1503(a–1) (2001), which prohibits an employee from receiving workers' compensation under District of Columbia law if "at any time" he or she has "receive[d] compensation under the workers' compensation law of any other state for the same injury or death." The Post contended that its 1999 and 2000 payments were compensation received by Malik under Virginia law. The Post alternatively argued that Malik's 1999 and 2000 injuries were not recurrences of his earlier District of Columbia injuries, but rather new injuries which he had suffered in Virginia.

A DOES Administrative Law Judge (ALJ) determined that Malik had not received payments from The Post "under the workers' compensation law of" Virginia, and that the injuries in question were recurrences or in aggravation of previous injuries Malik had suffered while working for The Post in the District, hence compensable under District of Columbia law. The Director of DOES affirmed and, for the reasons that follow, we do likewise.

I.

In 1996 Malik, then a journeyman machinist working for The Post in the District of Columbia, incurred a work-related injury to his back that caused him to miss several months of work. He filed a claim with DOES and received voluntary workers' compensation payments from The Post for that period. In August of 1997, he experienced a recurrence of the symptoms and was again compensated in the District for about a month of missed work. In September of 1999, Malik was working in The Post's Springfield, Virginia plant when he was re-injured[1] and forced to miss work for a month. The Post again paid him benefits on its own initiative, but

---

1. Based upon the evidence the Director termed the September 1999 injury a "re-injury." As pointed out, The Post disputes that characterization, arguing that the injury was a new one unrelated to the prior injury. See pages 300–01, *infra.*

this time computed them according to the payment schedule established by Virginia law. According to Malik's testimony credited by the ALJ, he cashed the payment check because he needed to pay bills, but voiced his disagreement to The Post's third-party administrator over the amount of the check, which was less than he had received in the District of Columbia in 1996 and 1997; he stated that he planned to appeal.

Essentially the same thing happened in March of 2000, after Malik suffered a recurrence of pain [2] while working in Virginia. When The Post chose to compensate him using Virginia rates, Malik protested and wrote on the back of the payment check that he did not agree with the amount and "was not accepting Virginia pay" as the workers' compensation owed him. Following receipt of this payment, Malik filed a claim with DOES based on the disability experienced in 1999 and 2000. In a decision sustained by the Director, the ALJ awarded Malik compensation in each instance minus a credit for the amounts The Post had purported to pay him under Virginia law.

## II.

As explained, D.C.Code § 32–1503(a-1) bars an employee from receiving workers' compensation in the District of Columbia if at any time he has received compensation "under the workers' compensation law of any other state for the same injury." *See Mendez v. District of Columbia Dep't of Employment Servs.*, 819 A.2d 959, 960 (D.C.2003). The primary issue before us is whether the Director erred in concluding that the payments The Post had made to Malik applying the Virginia compensation schedule were not made "under the workers' compensation law of [that] state."

In construing and applying § 32–1503(a-1), this court has followed the general rule of giving deference to an administrative agency's interpretation of the statute it administers. *See Springer v. District of Columbia Dep't of Employment Servs.*, 743 A.2d 1213, 1218 (D.C.1999). Since the meaning of the statutory phrase "under the workers' compensation law of any other state" might well vary in different contexts, the Director's interpretation of it in a given setting would seem to deserve that deference. But in this case the Director's application of the statute rested primarily on his determination of what *Virginia* law requires before a payment of compensation may be said to have been made under the laws of that state. The Director's special competence thus is not engaged to the usual extent in this case, making our review more in the nature of *de novo* consideration. Even so, we conclude that the Director correctly decided the issue. *Cf. Lee v. District of Columbia Dep't of Employment Servs.*, 509 A.2d 100, 102 (D.C.1986) (recognizing lesser deference owed where "the terms construed by the agency [are] outside its expertise").

The Post argues that Virginia law encourages the voluntary payment of workers' compensation and that once Malik accepted (*i.e.*, deposited) the payment checks tendered by The Post, this amounted to the receipt of compensation under Virginia law. The matter, however, is not that simple. The relevant Virginia statute is Va.Code § 65.2–701 A., which provides:

> If after injury or death, the employer and the injured employee or his dependents *reach an agreement in regard to compensation* or in compromise of a claim for compensation under this title, a memorandum of the agreement in the form prescribed by the [Workers' Compensation] Commission shall be filed

2. Again The Post disputes that this was a "recurrence" of the 1996 injury.

with the Commission for approval. The agreement may be prepared by the employee, the employer or the compensation carrier. If approved, the agreement shall be binding, and an award of compensation entered upon such agreement shall be for all purposes enforceable as provided by § 65.2–710 .... [Emphasis added.]

Virginia law thus gives effect to voluntary payments of compensation resulting from "an agreement in regard to compensation or in compromise of a claim for compensation." In fact, Virginia "encourage[s]" such "settlements made by and between the employee and employer." *Id.* § 65.2–701 C. The point, however, is that the parties must "agree" on the compensation voluntarily paid, and further "a memorandum of the agreement" must "be filed with the Commission for approval." *Id.* § 65.2–701 A. In *National Linen Serv. v. McGuinn,* 5 Va.App. 265, 362 S.E.2d 187 (1987), the court explained both Virginia's policy to encourage voluntary settlement of compensation claims and the "equally strong policy that when agreements as to settlements are reached they must be memorialized in a memorandum of agreement filed with the commission." *Id.* at 188–89. "Failure to promptly file memorand[a] of agreements," the court held, "is violative of the statute and frustrates a primary purpose behind the Workers' Compensation Act—to expedite the entry of awards in cases where the parties agree as to the compensability of the employee's injury." *Id.* at 189; *see also Henrico Pub. Utils. v. Taylor,* 34 Va.App. 233, 540 S.E.2d 501, 504 (2001).

■ The Post's 1999 and 2000 payments to Malik were not the result of an agreement or settlement. On the contrary, as the ALJ found, Malik rejected The Post's attempt to make Virginia law the measure of his benefits, believing that he was entitled to compensation under District law for a recurrence of his earlier injuries in the District of Columbia. Hence, no memorandum of agreement was filed with the Virginia Commission, which did not approve the payments as required by Virginia law.[3] Under the Virginia statutes and case law discussed, unilateral employer action of this kind, without agreement of the employee, is not recognized as the voluntary payment of benefits. The Post's payments to Malik, in a word, were volunteered, but they were not voluntary under Virginia's scheme, lacking the prerequisites of an agreement of the parties memorialized and filed for the Commission's approval. *See Washington Metro. Area Transit Auth. v. District of Columbia Dep't of Employment Servs.,* No. 02–AA–223, 825 A.2d 292 (D.C. May 29, 2003) (because compensation payments were not made in compliance with Maryland law, they did not constitute receipt of compensation by employee within meaning of D.C.Code § 32–1503(a–1)).

■ The Post nevertheless argues that because Malik filed no claim for the 1999 and 2000 injuries under District law before he accepted and deposited the payments made to him, our decision in *Springer, supra,* controls this case. There, with respect to the co-claimant, Strickland, we held that D.C.Code § 32–1503(a–1) barred him from compensation under District law because, among other things, he "acknowledged that he [had] received and accepted the benefits that [his employer] voluntarily [paid under New Jersey law], and that he [had] not file[d] a claim in the District of Columbia under the WCA until after he

---

**3.** As the court explained in *McGuinn, supra,* only upon such approval and entry of an award may "payments voluntarily made prior to the rendition of [the] award ... be deducted from the total amount of compensation due." 362 S.E.2d at 189.

received those benefits." *Springer*, 743 A.2d at 1218. But *Springer* and this case differ markedly. Unlike Strickland, Malik had been compensated under the District's law for the 1996 and 1997 injuries, and because he believed—and the ALJ ultimately found—that the 1999 and 2000 injuries were a recurrence or aggravation of the early ones, he disputed The Post's decision to treat Virginia compensation law as applicable to them, eventually challenging this action before DOES. In these circumstances, Malik's "acceptance" of the payments was not a waiver of his right to claim that the benefits were being paid under the law of the wrong jurisdiction, and that even Virginia law does not recognize them as voluntary payments.

### III.

There remains for consideration The Post's argument that, in any case, Malik experienced new injuries in Virginia in 1999 and 2000, causally unrelated to his former injuries and thus compensable under Virginia, not District of Columbia, law. The ALJ found, to the contrary, that the back injuries Malik suffered in 1999 and 2000 were "causally related to his November ... 1996 back injury as recurrences [or] aggravations of that prior condition." This finding is supported by the deposition testimony of Malik's treating physician, Dr. Brown, who opined that Malik's pre-existing spinal stenosis and degenerative disc disease had not been symptomatic until his 1996 injury, and that "what happened to him in 1996 has continued to be a problem for him [thereafter]."[4] It is further supported by the testimony that Malik's duties over the years at The Post included bending, reaching, stooping, and working in awkward positions—work

duties that, as the ALJ found, "are prone to cause aggravations and recurrences of his condition." "Aggravation of a pre-existing condition and repeated trauma which contribute to a disability may constitute a compensable injury under the [WCA]." *Brown v. District of Columbia Dep't of Employment Servs.*, 700 A.2d 787, 791 (D.C.1997); *see also Harris v. District of Columbia Office of Worker's Comp.*, 660 A.2d 404, 408 (D.C.1995) ("If the 'recurrence' resulted from a work-related trauma or event[,] ... then it constituted a compensable aggravation of a prior condition"). The ALJ's finding that the 1999 and 2000 injuries were each a recurrence or aggravation of the 1996 (and 1997) injuries is supported by substantial evidence in the record. *See Brown*, 700 A.2d at 792; *Harris*, 660 A.2d at 407.

*Affirmed.*

---

4. *See Short v. District of Columbia Dep't of Employment Servs.*, 723 A.2d 845, 851 (D.C. 1998) ("Under the law of the District of Columbia, there is a preference for the testimony of treating physicians over doctors retained for litigation purposes.").