Jocelyn L. WRIGHT, Petitioner,

v.

DISTRICT OF COLUMBIA DEPART-
MENT OF EMPLOYMENT
SERVICES, Respondent.

No. 87–1346.

District of Columbia Court of Appeals.

Argued Nov. 9, 1988.
Decided June 9, 1989.

Jocelyn L. Wright, pro se.

Michael A. Milwee, for respondent.

Before FERREN and STEADMAN, Associate Judges, and GALLAGHER, Senior Judge.

GALLAGHER, Senior Judge.

Petitioner Jocelyn Wright seeks review of a decision of the District of Columbia Department of Employment Services (DOES) denying her unemployment compensation. She contends first that she is entitled to benefits because, while she resigned from her job, she later attempted to rescind that decision and her employer's failure to accept that rescission made her separation involuntary.[1] She argues in the alternative that even if she voluntarily left, she did so for sufficient cause connected with her work. We conclude that the decision reached by DOES, which interprets its governing statute, D.C.Code § 46–101 *et seq.* (1981 & 1988 Repl.), that petitioner should be denied unemployment compensation is supported by the statute and should be affirmed. *See, e.g., Public Employee Relations Board v. Washington Teachers' Union Local 6, AFT,* 556 A.2d 206, 207 (D.C.1989).

I

Appellant began working for the Woodland Job Corps Center in August 1986, as a beginning reading and basic math instructor.[2] On April 27, 1987, she voluntarily submitted her resignation to be effective on May 7. The impetus behind her action seems to be that she felt that her supervisors were "conspiring" against her by placing unusually disruptive students in her classes to harass her.

1. Because it did not appear in the record that DOES directed itself to the legal question posed in this contention and because it is an issue of first impression in this jurisdiction, we remanded the record to the agency to obtain its determination of the issue. DOES subsequently issued a revised opinion in the case on April 10, 1989, which we now have before us.

2. The Job Corps provides basic educational skills and vocational training to disadvantaged youths.

3. The Appeals Examiner found that

The resignation was accepted on the date it was tendered. A day or two prior to the effective date of the resignation, however, she attempted to withdraw it. Her effort proved unsuccessful, though, because the employer refused to accept the withdrawal. She was subsequently separated from her employment on May 7, 1987.

Petitioner filed for unemployment compensation benefits, but was disqualified by a claims examiner because he determined that she voluntarily quit without good cause connected to her work. *See* D.C. Code § 46–111(a) (1988 Repl.). Wright appealed the claims examiner's determination, and after a hearing at which she testified, an appeals examiner issued findings of fact and conclusions of law affirming that determination.[3] This decision was in turn affirmed by the DOES Office of Appeals and Review (OAR). This appeal followed.

II

In its final decision, the OAR determined that (1) petitioner voluntarily left her job, (2) that her employer's failure to accept her attempted withdrawal of that resignation did not render her departure involuntary, and (3) that she did not leave her employment for good cause connected to her work. We thus turn to examine whether "the findings of fact, upon which the compensation authorities based their decision, are supported by substantial evidence in the record and whether the ultimate decision is in accordance with the law." *Gomillion v. District of Columbia Department of Employment Services,* 447 A.2d 449, 450–51 (D.C.1982); D.C.Code § 1–1510(a)(3)(E) (1981).

> [petitioner] left her ... job of her own volition. .[She] failed to show good cause connected with work for quitting. Both parties have shown that the students were disruptive, however the [petitioner] has not shown where this was a conspiracy on the part of the employer to disrupt her classes. [Petitioner's] testimony indicates "general dissatisfaction with the work," which shall not constitute good cause for leaving one's ... work. [Petitioner] is ineligible to receive benefits.

### A.

■ "[A]ny individual who left his most recent work voluntarily ... shall not be eligible for [unemployment] benefits...." D.C.Code § 46–111(a). There is a rebuttable presumption that an employee's leaving is involuntary. *See McLean v. District of Columbia Department of Employment Services,* 506 A.2d 1135, 1137 (D.C.1986) (citing *Green v. District of Columbia Department of Employment Services,* 499 A.2d 870, 874 (D.C.1985)). The presumption stands unless "the claimant acknowledges that [it] was voluntary or the employer presents evidence to support a finding that [it] was voluntary." 7 DCMR 311.3 (1986).[4] Here, petitioner admits that she left her employment voluntarily in the sense that she resigned.[5] She argues, however, that the employer's failure to accept her eleventh-hour attempt to withdraw her resignation transforms that voluntary act into an involuntary termination and thus entitles her to benefits.

DOES has not previously had occasion to consider this question, and while it is an issue that has been the subject of some litigation in other jurisdictions, it is not one that has been uniformly decided. *See* Annotation, *Eligibility for Unemployment Compensation Benefits of Employee Who Attempts to Withdraw Resignation Before Leaving Employment,* 36 A.L.R.4th 395, 397–400 (1985). A minority of courts have determined that the employer's refusal to accept the withdrawal of the resignation renders the subsequent termination involuntary and thus entitles the employee to compensation benefits. *See, e.g., Mauro v. Administrator,* 19 Conn.Supp. 362, 113 A.2d 866 (Super.Ct.1954); *Cotright v. Doyal,* 195 So.2d 176, 179 (La.App.1967). Others—most notably Pennsylvania—have held that the employee is entitled to benefits if she can show that the employer had taken no steps to replace her between the date notice was tendered and the date the employee sought to rescind that notice. *See, e.g., Zimmerman v. Commonwealth Unemployment Compensation Board of Review,* 101 Pa.Cmwlth. 274, 277–80, 516 A.2d 102, 104–05 (1986), *appeal denied,* 515 Pa. 591, 527 A.2d 549 (1987).

Still others—the majority of those that have considered the matter—have denied benefits, reasoning that the employer is not required to accept the withdrawal of resignation. *See, e.g., Osterhout v. Everett,* 6 Ark.App. 216, 639 S.W.2d 539 (1982); *Rabago v. Unemployment Insurance Appeal Board,* 84 Cal.App.3d 200, 207–08, 148 Cal. Rptr. 499, 504 (5th Dist.1978); *Batts v. Review Board of Indiana Employment Security Division,* 179 Ind.App. 405, 406, 385 N.E.2d 1174, 1176 (Ind.Ct.App.1979); *Guy Gannett Publishing Co. v. Maine Employment Security Commission,* 317 A.2d 183 (1974); *Nicholas v. Board of Review,* 171 N.J.Super. 36, 407 A.2d 1254 (1979); *Whicker v. High Point Public Schools,* 56 N.C.App. 253, 287 S.E.2d 439 (1982).

DOES has determined that the majority rule is the better one and is most consistent with the intent of the unemployment compensation statute, *see Greenwood's Transfer & Storage Co. v. District of Columbia Department of Employment Services,* 553 A.2d 1246, 1247 n. 1, 1248 (D.C.1989) (per curiam) (citing *Reichley v. District of Columbia Department of Employment Services,* 531 A.2d 244, 247 (D.C.1987)). We agree.

■ Although our unemployment compensation statute is remedial in nature and must be liberally construed, *see Better Business Bureau of Washington v. District of Columbia Unemployment Compensation Board,* 34 A.2d 614, 616 (1943), it must be given an interpretation in keeping with the intent of the legislature. The overlying purpose of the statute "is to minimize the hardship encountered by workers whose condition of unemployment is due to

---

4. Voluntariness means " 'voluntary in fact, within the ordinary meaning of that term.' " *Hockaday v. District of Columbia Dep't of Empl. Servs.,* 443 A.2d 8, 10 (D.C.1982) (quoting 18 DCRR § 301.1(a)(1)).

5. This fact was recognized by petitioner early on in the DOES claim process. *See, e.g.,* Separation—Fact Finding Report, at 1 (May 8, 1987) ("5. I am no longer working for this employer because I quit.")

causes utterly beyond their ability to remedy." *Doherty v. District of Columbia Unemployment Compensation Board,* 283 A.2d 206, 209 (D.C.1971), *cert. denied,* 406 U.S. 932, 92 S.Ct. 1764, 32 L.Ed.2d 135 (1972). "Underlying this long-range objective ... is the notion that it should be the responsibility of employers to compensate their employees when they become unemployed through no fault of their own." *American Security Trust Co. v. District of Columbia Unemployment Compensation Board,* 376 A.2d 824, 825 (D.C.1977) (quoting *Van Stauffenberg v. District of Columbia Unemployment Compensation Board,* 148 U.S.App.D.C. 104, 107, 459 F.2d 1128, 1131 (1972)). We cannot say that petitioner has become unemployed through no fault of her own since it was her "own action of resignation which set in motion the chain of events which ultimately resulted in [her] unemployment." *Osterhout, supra,* 6 Ark.App. at 218, 639 S.W.2d at 540.

As noted in *Guy Gannett Publishing Co., supra,* 317 A.2d at 187,

> A resignation, when voluntary, is essentially an unconditional event the legal significance and finality of which cannot be altered by the measure of time between the employee's notice and the actual date of departure from the job. An employer who accepts an unequivocal notice of resignation from an employee is entitled to rely upon it ... unless, of course, the employer chooses to return to *status quo* by rehiring the employee, or accepting a retraction of the notice.

We agree with DOES' adoption of this position—which rejects the contention that an employee resignation becomes final *only* upon the physical departure of the employee from the job site—for several reasons.

■■■■ First, an at will employment contract—like that at issue here—requires both voluntariness and mutuality to exist. *See Batts, supra,* 385 N.E.2d at 1176. Being at will, however, it can be unilaterally terminated by either party, *see Wemhoff v.*

*Investors Management Corp. of Am.,* 528 A.2d 1205, 1208 (D.C.1987); *Sullivan v. Heritage Foundation,* 399 A.2d 856, 859–60 (D.C.1979), and "[o]nce terminated a meeting of the minds is again required to establish an employment relationship." *Batts, supra,* 385 N.E.2d at 1176. Obviously, if an employer fails to accept the attempted withdrawal of a tendered resignation, there is no "meeting of the minds."

Second, to require an employer to accept a withdrawal of a resignation at any time prior to its effective date would severely hamper the employer's ability to function efficiently. For example, the employer would be unable to hire and train a replacement for the vacated position, or otherwise adjust his work force to prepare for the employee's absence, except at his peril; the employee might at any time, at his whim, decide to rescind his resignation, thereby wasting both the time and financial resources expended in training his replacement. *See Guy Gannett Publishing Co., supra,* 317 A.2d at 187; *Nicholas, supra,* 171 N.J.Super. at 37, 407 A.2d at 1255.[6]

We find the Pennsylvania rule—that an employer can refuse to accept the withdrawal only if it has taken steps to replace the employee—no more appealing.

> In the interest of definitiveness and fairness to the employer, we do not think the employer should be burdened with proving facts necessary to establish reliance and prejudice in order to justify a refusal to permit withdrawal of a notice to quit. Degrees of reliance and prejudice can vary. Requiring such proof would introduce an undesirable degree of uncertainty into the employment relationship.

*Rabago, supra,* 84 Cal.App.3d at 207, 148 Cal.Rptr. at 504. Similarly, because of the varying degrees of prejudice and reliance, it would also introduce a burdensome layer of case by case litigation as to what efforts taken by an employer suffice to establish that the employer has sought to replace the employee. This has been the outcome in Pennsylvania. *See, e.g., Hale v. Common-*

---

6. In addition, as DOES noted in its opinion, if the employer chose not to accept the withdrawal, it would be charged "for benefits (and its unemployment insurance taxes increased) when the impetus in the separation" was the employee.

*wealth Unemployment Compensation Board of Review,* 57 Pa.Cmwlth. 245, 247, 425 A.2d 1216, 1218 (1981); *Goughnour v. Commonwealth Unemployment Compensation Board of Review,* 54 Pa.Cmwlth. 83, 420 A.2d 30 (1980).

We therefore endorse the DOES position that once an employee voluntarily resigns from her job, the employer's decision not to accept a subsequent withdrawal of that resignation does not transform the employee's act into an involuntary one.

> The employee should assume the responsibility of making sure he knows what he is doing before he decides to take such drastic action as giving the employer a notice to quit. The burden should rest with the employee who initiated the action by giving the initial notice and who in every real and practical sense is the moving party, try as he may to reverse the roles. It seems to us that it would be a distortion of reason and common sense to hold under these circumstances that the employer is the moving party and that the severance of the employment was involuntary.

*Rabago, supra,* 84 Cal.App.3d at 207–08, 148 Cal.Rptr. at 504.

### B.

■ With the voluntariness of petitioner's action thus established, she has the burden of proof on the issue of whether she resigned for "good cause" connected with her employment. *Bowen v. District of Columbia Department of Employment Services,* 486 A.2d 694, 698 (D.C.1985); *Harris v. District of Columbia Department of Employment Services,* 476 A.2d 1111, 1113 (D.C.), *cert. denied,* 469 U.S. 863, 105 S.Ct. 200, 83 L.Ed.2d 132 (1984); 7 DCMR § 311.4 (1986). The claims examiner concluded that petitioner had not demonstrated "good cause." That determination is reasonable, and based on " 'reliable, probative, and substantial evidence' of record." *Pendleton v. District of Columbia Board of Elections & Ethics,* 449 A.2d 301, 304 (D.C.1982) (quoting D.C.Code § 1–1509(e) (1981)); *see Jameson's Liquors, Inc. v. District of Columbia Alco-*

*holic Beverage Control Board,* 384 A.2d 412, 418 (D.C.1978).

■ Petitioner failed to present evidence sufficient to establish her "conspiracy" theory; nor could she establish that the general disruptive nature of the students, or the challenges entailed in her position as an instructor of disadvantaged youths, were so onerous or unexpected as to constitute constructive termination. *See Pressley Ridge School v. Commonwealth Unemployment Compensation Board of Review,* 60 Pa.Cmwlth. 596, 597–98, 432 A.2d 299, 300–01 (1981) (citing *Hazzard v. Commonwealth Unemployment Compensation Board of Review,* 50 Pa.Cmwlth. 620, 413 A.2d 478 (1980)). Finally, any perceived animosity between petitioner and her supervisors is insufficient in this case to constitute "good cause." *Cf. Koman v. Commonwealth Unemployment Compensation Board of Review,* 61 Pa.Cmwlth. 604, 608, 435 A.2d 277, 280 (1981).

There is substantial evidence in the record supporting the agency decision in this case, and that decision is neither arbitrary, capricious, nor an abuse of discretion. Thus, we conclude that the agency's decision should stand. *See Cohen,* 496 A.2d 603, 605, D.C.Code § 1–1510(a).

*Affirmed.*