# AMERICAN BROADCASTING COMPANIES, INC., et al., Petitioners,

v.

# DISTRICT OF COLUMBIA DEPARTMENT OF EMPLOYMENT SERVICES, Respondent.

## No. 99–AA–1419.

District of Columbia Court of Appeals.

Argued March 14, 2003.

Decided May 8, 2003.

Joseph Baumgarten, a member of the bar of New York, pro hac vice, with whom Mark J. Biros, Washington, DC, was on the brief, for petitioners.

Michael A. Milwee for respondent.

Before TERRY and STEADMAN, Associate Judges, and PRYOR, Senior Judge.

PRYOR, Senior Judge:

Petitioners seek review of a decision of the District of Columbia Department of Employment Services ("DOES") awarding unemployment compensation to members of a local union who, in the course of a labor dispute, initiated a strike, and were later locked out by the employer until an agreement was reached. Although an examiner denied any compensation to the claimants, the Office of Appeals and Review ("OAR") reversed the decision, and awarded benefits to the claimants for the days during the labor dispute when they were precluded from returning to work.

Petitioners assert a series of challenges; we address only the question of eligibility of the claimants for benefits because that issue is dispositive of the case. We conclude that the final order of the DOES, applying D.C.Code § 51–110(f) and awarding compensation benefits, was error. We reverse.

## I.

Respondents, members of the National Association of Broadcast Employees and Technicians (the "union"), Local 31, were employed by one or more of petitioners (collectively "ABC") in the District of Columbia. The collective bargaining agreement under which the union and ABC had operated expired on March 31, 1997, and until the time at which the events giving rise to the instant action took place, the parties had been unsuccessful in their periodic endeavors to reach a new agreement. At approximately 5:00 a.m. E.S.T. on November 2, 1998, members of Local 16, the New York City Local, began picketing the facilities there, thus precipitating a nationwide strike. The strike was intended to be for twenty-four hours;[1] however, at ap-

___

1. This was the second unannounced strike after the collective bargaining agreement ex-

proximately 10:30 a.m., a series of proposed conditions to terminate the dispute were exchanged, none of which proved satisfactory to the parties.[2] As a result, ABC notified the union by posting a notice at its Washington News Bureau at the end of the day that ABC would thereafter exclude members of the union from the work premises. This circumstance continued until January 15, 1999, when the union agreed to provide the strike notice that ABC first requested.

On November 11, 1998, 153 union members ("union members") filed claims for unemployment benefits with the DOES.[3] They sought benefits effective November 1, 1998. The DOES held a hearing on the claims on December 28, 1998, and on February 18, 1999, the presiding Appeals Examiner mailed to the parties his decision denying benefits.

The union members filed a timely appeal from the Appeals Examiner's decision to the OAR. The OAR reviewed the claims and issued a proposed decision, which considered the relevant provision of the statute, D.C.Code § 51–110(f) (2001),[4] a number of judicial decisions, including *National Broadcasting Co. v. District Unemployment Compensation Bd.*, 380 A.2d 998 (D.C.1977); *Barbour v. District of Co-*lumbia Dep't of Unemployment Servs., 499 A.2d 122 (D.C.1985), rendered by this court, as well as Pennsylvania precedent. The OAR reversed the decision of the Appeals Examiner and concluded that the claimants should be deemed eligible to receive some benefits. After considering the parties' respective views, the OAR adopted *in toto* the analysis in its proposed decision and effected its final decision on August 6, 1999.

The present appeal followed.

## II.

### A.

The outcome of this case is determined by our interpretation of the pertinent section of the statute, D.C.Code § 51–110(f). For that reason, we begin with a statement of that provision:

> An individual shall not be eligible for benefits with respect to any week if it has been found by the Director that such individual is unemployed in such week as a direct result of a labor dispute, *other than a lockout,* still in active progress in the establishment where he is or was last employed.

D.C.Code § 51–110(f) (emphasis added).

ABC contends that a reading of the statute, in light of our strong precedent to

---

pired. The earlier strike was also a twenty-four hour strike, which took place on November 1, 1997 in Houston, Texas. That strike resulted in ABC's inability to air the Saturday round of that year's P.G.A. championship tournament.

2. The first exchange was a letter from the union to ABC, wherein the former notified the latter of the strike's finite duration. ABC responded by indicating that, unless the union agreed to provide seventy-two hours' notice for any future strikes for regular programming, and fourteen days' notice for remote broadcasts, ABC would not accept a return to work. The union countered with an offer to return with the promise not to strike over

ABC's unwillingness to provide information the union sought regarding a benefits package. In response, ABC rejected this offer, asserting that it did nothing to address ABC's concerns regarding unannounced strikes. The union made another offer, which, in addition to the conditions of the first union offer, would have bound the parties for a period of thirty days, not to cause work to stop. This, too, was unsatisfactory to ABC, and the lockout ensued.

3. We treat the union members as a class. Ms. Constance Sims is the named claimant.

4. Formerly D.C.Code § 46–310 (1973), then recodified as D.C.Code § 46–110(f) (1981).

the contrary, *National Broadcasting Co. v. District Unemployment Compensation Bd.*, 380 A.2d 998 (D.C.1977) ("*NBC*"), demonstrates that OAR's decision to grant unemployment benefits was clearly erroneous. In response, the DOES urges that the dynamic relationship between employers and employees, the equitable resolution of the circumstances that arose in this instance, and the amendment of the District's statute, are substantial reasons to uphold the decision.

In *NBC, supra,* this court faced a situation remarkably similar to the instant case. NBC and the same union's collective bargaining agreement expired on March 31, 1976, whereupon the union effected a strike. Five days later, the union notified NBC that its members were willing and able to return to work on April 7, 1976 under the *status quo* until a new agreement could be reached. NBC, much like ABC in the instant case, responded by requiring the union to agree to certain conditions, which the union rejected.[5] The union members, thereafter, were prevented from returning to work. The union filed a claim for unemployment benefits, and the examiner denied the claim based upon D.C.Code § 51–110(f).[6] The OAR's analogue, the Unemployment Compensation Board ("Board"), found it inequitable to refuse benefits to claimants who were unemployed and willing to return to work. This court reversed the administrative decision, holding that the claimants were unemployed because they voluntarily initiated the interruption of work arising out of a labor dispute, and thus were not eligible to receive unemployment benefits. *NBC, supra,* 380 A.2d at 1000.

Several months before the *NBC* decision, on September 7, 1977, a draft bill that included the present reference to "other than a lockout" was presented to the Council of the District of Columbia for consideration. Subsequently, the Council adopted readings of Bill 2–209, "District of Columbia Unemployment Compensation Act amendments for 1978," which retained the reference to "a lockout." The bill was a sweeping overhaul of the District of Columbia Unemployment Compensation Act, and the amendment altering D.C.Code § 51–110(f) by adding the phrase "other than a lockout" constituted only a small part of it. On August 30 of the same year, the mayor signed the legislation, which was assigned Act No. 2–267 and published at 25 D.C.Reg. 2451 on September 22, 1978. The Council then transmitted the legislation to Congress on January 18, 1979, and upon the expiration of the thirty-day Congressional review period required under § 602(c)(1) of the District of Columbia Self–Government and Reorganization Act, Pub.L. 93–198 (1973), Act No. 2–267 became effective as D.C. Law 2–129 on March 3, 1979.

## B.

▮▮ In reviewing a case of this nature, we generally give some deference to decisions rendered by administrative agencies. *Springer v. District of Columbia Dep't of Employment Servs.*, 743 A.2d 1213, 1218 (D.C.1999); *Long v. District of Columbia Dep't of Employment Servs.*, 717 A.2d 329, 331 (D.C.1998) (citations omitted). Such deference merely reflects the statutory authority entrusted to an agency to regulate a particular area of public activity. It is contemplated that the agency's experience and expertise will

---

5. The condition in *NBC* required the union to agree to prevent alleged sabotage of NBC facilities and to extend the expired contract.

6. At the time, § 51–110 did not contain the language "other than a lockout," emphasized above.

yield a pattern of reasonably consistent decisions regarding questions arising within its jurisdiction. Thus, our review of administrative decisions is limited. We normally defer to the decision reached, so long as it flows rationally from the facts and is supported by substantial evidence. *Washington Post Co. v. District Unemployment Compensation Bd.*, 377 A.2d 436, 439 (D.C.1977). Similarly, we defer to an administrative agency's interpretation of the statute that it administers "if that interpretation is a reasonable one in light of the language of the statute and its legislative history," as well as judicial precedent. *Lincoln Hockey, LLC v. District of Columbia Dep't of Employment Servs.*, 810 A.2d 862, 866 (D.C.2002) (citation omitted). This does not mean that we do not consider the agency's interpretation of the statute with care; we are, however, obliged to construe the provision with a view to our earlier holding and supporting rationale. *See Morrison v. District of Columbia Dep't of Employment Servs.*, 736 A.2d 223, 224–25 (D.C.1999) (citations omitted).

### C.

■ Turning now to this case, we observe that considerable time has passed since our decision in *NBC* (1977). The question now posed is whether, under the provision as amended in 1979, a voluntary work stoppage by employees can be converted to a lockout, when the employer, in the absence of an agreement, refuses to permit the employees to return to work. As was so in *NBC*, there is no dispute as to the facts in this instance. Accordingly, our review focuses on the agency's application of the amended statute.

Most would agree, as the DOES points out, that the relationship between employer and employee is undergoing substantial change. We are mindful that legislation in this important area of the work place strives to balance legitimate concerns of the employer, as well as the hardship of unemployment. *See Wright v. District of Columbia Dep't of Employment Servs.*, 560 A.2d 509, 511 (D.C.1989). It is unclear whether the Council amended the statute, with respect to eligibility for benefits, intending to legislate a different result from that reached in *NBC*. The DOES does not argue that this was the Council's intent. It does urge that the language, "other than a lockout," could equitably be read to permit benefits for the claimants here. It advances this view, relying, in part, on Pennsylvania precedent, i.e., *AVCO Corp. v. Pennsylvania Unemployment Compensation Bd.*, 105 Pa.Cmwlth. 316, 524 A.2d 531 (1987) which, applying Pennsylvania's applicable statutes, allows a strike to be converted to a lockout if, under all the circumstances, the strikers' willingness to return to work satisfies a requirement of reasonableness. *Id.*[7] While we appreciate the attractiveness of this approach to the union, it is clear that in order to resolve the question presented here, we must look to our local statute and the decisions which have evolved applying it. *Barbour, supra*, 499 A.2d at 122, established that, under our statute, a disqualification from benefits arising from a "labor dispute" can occur even after a bargaining agreement has expired. The *Wright* case, *supra*, 560 A.2d at 512, addressing the circumstances of resignation from employment, noted that generally an employee cannot claim compensation, having initially been the cause of the unemployment. Returning to our decision in *NBC*, we said, "Where, as here, the initial cause of unemployment is a labor dispute, the claimants may not convert that dispute into a situation of

---

7. We rejected a similar contention premised on Pennsylvania decisions in *Wright, supra*, 560 A.2d at 509–11.

involuntary unemployment outside the scope of § 10(f) merely by offering to return to work." 380 A.2d at 1000.

We conclude that the amended reference to a "lockout" does not change what has been the continuing construction of the statute. Specifically, we have consistently determined eligibility for compensation benefits on the basis of the initial cause of the interruption of the employment. The reference to "lockout" does no more than make explicit what was earlier an arguable point. *See NBC, supra,* 380 A.2d at 999–1000. Thus, employees who, in the course of a labor dispute not yet resulting in a strike, are refused entry to the work place will not be disqualified from receiving unemployment benefits. But it is the initial cause of the unemployment, not subsequent events (such as the conversion of a strike to a lockout), that determines eligibility for such benefits. In this instance, looking at the language of the existing statute, our earlier decisions, and *NBC* in particular, we conclude that the DOES erred in its application of the statute in the circumstances presented. Accordingly, the order is

*Reversed.*