**MAJERLE MANAGEMENT
INC., Petitioner,**

v.

**DISTRICT OF COLUMBIA RENTAL
HOUSING COMMISSION,
Respondent.**

No. 02–AA–427.

District of Columbia Court of Appeals.

Argued March 11, 2003.

Decided Dec. 30, 2004.

Vincent Mark J. Policy, with whom Morris R. Battino and Richard W. Luchs, Washington, DC, were on the brief, for petitioner.

Mary T. Connelly, Assistant Corporation Counsel, with whom Arabella W. Teal, Interim Corporation Counsel at the time, and Charles L. Reischel, Deputy Corpora-

tion Counsel at the time, were on the brief, for respondent.*

Before WAGNER, Chief Judge, and KERN and STEADMAN **, Senior Judges.

STEADMAN, Senior Judge:

This case is before us for a second time after remand on a first appeal. The issue is the application of the three-year limitation for challenges to rent adjustments contained in the Rental Housing Act of 1985 (Act). D.C.Code § 45–2516(e) (1996) (now codified as D.C.Code § 42–3502.06(e) (2003)).[1] The Rental Housing Commission (RHC) ruled that the tenant who filed a rental overcharge claim in the case now before us could challenge a rent increase effectuated more than three years prior to the filing of the claim where (1) a further rent adjustment petition was filed by the housing provider during that three-year period and, in addition, (2) the housing provider had acknowledged both the correct lawful rent ceiling and the possibility of the tenant overcharge. Petitioner Majerle Management, Inc. (Majerle) asserts that the RHC holding is inconsistent both with prior case law and with prior holdings of the RHC interpreting the Act. We think that the RHC has permissibly found that the "unique set of facts" in this case, including the record admissions by Majerle,

distinguish this case from our past precedent and from earlier RHC holdings. Accordingly, we affirm, the order of the RHC imposing sanctions for rent overcharges.

## I. Facts

The factual background prior to remand in the first appeal is set forth in the court's opinion in *Majerle Mgmt., Inc. v. D.C. Rental Hous. Comm'n*, 768 A.2d 1003, 1005–06 (D.C.2001) (*Majerle I*). We set forth here only the facts relevant to the issues that arise from Majerle's challenge in this appeal to the RHC's March 26, 2002 decision and order following remand.

In the mid–1970s, Bertha Redmond (Redmond) became a tenant in a five-unit apartment building located at 4301 Halley Terrace, Southeast, in the District of Columbia. In December 1986, William and Mary Bailey purchased that property as tenants by the entirety and continued to rent the building's units, including Redmond's. On December 22, 1987, pursuant to the Rental Housing Act of 1985, D.C.Code § 45–2501 *et seq.* (1987) (current version at D.C.Code § 42–3501.01 *et seq.* (2003)), William Bailey filed an amended registration statement for the property, which the RHC found to be defective in certain respects,[2] that increased Redmond's rent ceiling and monthly rent from $218 per month to $228 per month, effective September 1, 1987.

---

* While this appeal was pending, the title of the District's chief attorney was changed. The Corporation Counsel is now officially known as the Attorney General for the District of Columbia. *See* Mayor's Order No. 2004–92 (May 26, 2004), 51 D.C. Register 6052.

** Judge Steadman was an Associate Judge of the court at the time of argument. His status changed to Senior Judge on October 18, 2004.

1. Subsequent references in this opinion to this provision reflect its former codification at D.C.Code § 45–2516(e), which was in effect during the bulk of the proceedings.

2. Specifically, the RHC observed that the amended registration was filed eleven months after the statutorily imposed deadline, that a discrepancy in the number of rental units covered existed, that the filing failed to reflect Mary Bailey's concurrent ownership in the subject property, and that the filing did not identify the section of the Act that authorized the rent increase, and that a housing business license was not attached to the amended registration form. However, the RHC found that § 45–2516(e) precluded Redmond's challenge to such errors in the September 1, 1987 filing.

Redmond paid $228 monthly in rent until November 1, 1988, when the rent was again increased to $239 per month, an amount that Redmond subsequently paid. On September 1, 1989, Mary and William Bailey [3] increased Redmond's rent further to $250 per month, again an amount that Redmond paid. The Rent Administrator has no record of any filing relating to either of these last two rent increases, and the record does not reveal that any such filing was ever submitted.

On March 23, 1990, an amended registration form was filed listing Mary Bailey as the property owner and Majerle as the management company. This March 1990 registration form contained no information concerning rent levels. On May 31, 1991, Majerle sent a notice of an automatic rent increase to Redmond that indicated that her rent ceiling was $228 and would be increased to $240, despite the fact that the rent being charged was $250 per month. The May 31, 1991 notice also stated that Redmond "may have been overcharged ... rent ....".[4] Pursuant to 14 DCMR § 4204.10,[5] the housing provider sought to take and perfect its rent ceiling increase by filing, on July 1, 1991, a certificate of adjustment of general applicability (an automatic rent increase). On that date, the housing provider also filed a third amended registration form. The July 1991 rent adjustment reflected an increase to $240. The July 1991 registration filing was defective, in part, because the certificate of occupancy and housing business licenses attached to it contained errors. Specifically, neither the certificate of occupancy nor the housing business license were, as required, issued to the owner of the property, Mary Bailey. The certificate of occupancy also was defective because it was issued for a four-unit building, but was attached to an amended registration form and housing business license reflecting a five-unit property. In July 1991, Majerle, in fact, decreased Redmond's monthly rent from $250 to $240.

On September 22, 1992, Redmond filed a complaint with the Rental Accommodations and Conversion Division (RACD) against "Majerle Management Inc./For

---

3.  On December 17, 1989 William Bailey died, and Mary Bailey was appointed personal representative of his estate. Majerle was hired to manage the subject property in February 1991.

4.  Majerle's May 31, 1991 notice read, in pertinent part:

    Dear Mrs. Redmond:
    In accordance with Section 206(b) of the Rental Housing Act of 1985, D.C. Law 6–10, please be advised that the rent ceiling for your apartment will be increased to $240, effective July 1, 1991.

    | | |
    |---|---|
    | Your Legal Rent Ceiling Is | $228.00 |
    | Your Current Rent Charged Is | $250.00 |
    | Your New Rent Ceiling Is | $240.00 |
    | Your New Rent Charged Is | $240.00 |

    ....
    Notice: Records available from the owner, now deceased, show that you may have been over-charged on your rent account. If you believe this is the case, please notify this office, in writing, within thirty (30) days or we will consider your account to have been correctly charged.

5.  14 DCMR § 4204.10 states:

    Notwithstanding § 4204.9, a housing provider shall take and perfect a rent ceiling increase authorized by § 206(b) of the Act (an adjustment of general applicability) by filing with the Rent Administrator and serving on the affected tenant or tenants in the manner prescribed in § 4101.6 a Certificate of Election of Adjustment of General Applicability, which shall do the following:
    (a) Identify each rental unit to which the election applies;
    (b) Set forth the amount of the adjustment elected to be taken, and the prior and new rent ceiling for each unit; and
    (c) Be filed and served within thirty (30) days following the date when the housing provider is first eligible to take the adjustment.

Mary Bailey and the Estate of William Bailey" in which she alleged that the rent she was charged exceeded the lawful rent ceiling.[6] During the RACD hearing, the housing provider testified that the legal rent ceiling for Redmond's unit was $228 per month at the time it executed its May 31, 1991 notice.[7] Following a lengthy hearing and appeals process, the RHC, to which appeals from the RACD may be taken, issued a final decision on June 4, 1999, awarding Redmond treble damages for rent overcharges from September 22, 1989 through March 27, 1996, the date of the RACD hearing, including interest.[8] The RHC calculated the overcharge based on its holding that the lawfully permitted rent ceiling was $228 per month. The RHC rejected Majerle's claim that because the $250 per month rent had been charged since September 1, 1989, three years and 21 days prior to the filing of the claim, the statute forbade any examination of alleged unlawful adjustments prior to that three year period so as to form the basis for the overcharge claim. Majerle petitioned this court for review of the RHC's decision. On March 15, 2001, we issued *Majerle I*, 768 A.2d at 1010, affirming the RHC's ruling that Majerle was liable to Redmond for excess rent charged above what it found to be the lawful rent ceiling of $228.

Majerle sought rehearing or rehearing en banc, requesting further review of our decision to reject its claim that the three year statute of limitations barred Redmond's challenge to the $250 per month rent. It cited a number of RHC decisions that it said were in direct conflict with our holding, in addition to our prior decision in *Kennedy v. D.C. Rental Hous. Comm'n,*

---

6. Redmond also claimed that the services and facilities she derived from the apartment had been reduced substantially because of various housing code violations. The 1999 order imposed a sanction for these violations. Our remand instructed the RHC to re-examine the question of an award of damages subsequent to the date of the tenant's petition. Majerle does not challenge that portion of the RHC remand order but instead attempts to argue for an application of a limitations period that we rejected on the prior appeal. *Majerle I*, 768 A.2d at 1008–09 n. 13. Since the issue was conclusively resolved in that appeal, the law of the case doctrine prevents further consideration of the issue. *See, e.g., Thoubboron v. Ford Motor Co.*, 809 A.2d 1204, 1215 (D.C. 2002). The same rationale applies to Majerle's arguments regarding the fines imposed on it for violating regulations pertaining to retaliation and registration. *See Majerle I*, 768 A.2d at 1009 n. 14.

7. According to the record, the transcript of the RACD hearing contained the following testimony:

   MS. REDMOND: Going back to the tenant notice of 1991, Section 206(b), Increase of General Applicability, how did you arrive at that $240 you're now listing as the new rent ceiling?

   MR. MAJERLE: I have to look at it again. Can I look at a copy?
   EXAMINER
   BRADFORD: Let him see a copy.
   MR. MAJERLE: That would have been a 5.4% increase over $228, the legal rent ceiling as I saw it.
   MS. REDMOND: And how did you determine that the legal rent ceiling was $228?
   MR. MAJERLE: Based on the registration file.

8. The total overcharge came to $1150.66. It was calculated in two parts: an overcharge of $467.86 for the period September 22, 1989 through June 20, 1991, in the imposition of a rental of $250 instead of $228; and an overcharge of $682.80 for the period July 1, 1991, through March 27, 1996, in the imposition of a rental of $240 instead of $228. The total overcharge was then trebled and interest added. As indicated in note 3, *supra*, Majerle, at some point not entirely clear from the record, was hired to manage the property and liability was imposed by the RHC only on it. Under the Act, "an owner ... or their agent" qualifies as a housing provider. D.C. Code § 42–3501.03 (2002) (former § 45–2503). Majerle is the only party taking the appeal.

709 A.2d 94 (D.C.1998). The merits division granted Majerle's petition for rehearing, concluding that, in light of the arguments advanced and legal authorities cited in Majerle's petition, the RHC had not adequately explained its consideration of relevant legal principles. *Majerle Mgmt. Inc. v. D.C. Rental Hous. Comm'n,* 777 A.2d 785 (D.C.2001). Accordingly, the merits division vacated Part III of the *Majerle I* decision and remanded the case to the RHC "for further consideration of its determination of a refund for asserted rent overcharges." *Id.* at 785. The court directed that "[t]he Rental Housing Commission shall provide a clear explanation of its reasons for concluding that the lawful rent ceiling for the tenant was $228 per month, including statements regarding the applicability, or not, of the Rental Housing Commission decisions cited in the petition for rehearing or rehearing en banc." *Id.*

On remand, the RHC, in a lengthy decision and order dated March 26, 2002, reaffirmed its own June 4, 1999 decision and order. The RHC asserted that Redmond's case presented a "unique set of facts" that distinguished it from earlier RHC precedent[9] holding that a challenge to a rent adjustment cannot be brought more than three years after the adjustment was put in place. The RHC focused first on the Tenant Notice for 1991 Section 206(h) Increase of General Applicability that had been sent to the tenant on May 31, 1991.

In that notice, the housing provider indicated that the tenant's legal rent ceiling was $228 per month and stated on the face of the notice that its records revealed the tenant might have been overcharged. Then, on July 1, 1991, the housing provider both filed a Certificate of Election of Adjustment of General Applicability with the RACD that implemented the adjustment of general applicability, noticed on May 31, 1991, and reduced the rent accordingly from $250 to $240.[10] Thus, within the three year period following the implementation of the challenged adjustment, the housing provider had sought another adjustment in the rent ceiling. Furthermore, both in the notice to the tenant and in the filing with the RACD, the housing provider had acknowledged that the lawful ceiling was $228, which, absent any time limitation, accurately reflected the situation as shown by the RACD records. These facts, in the RHC's view, permitted a re-examination of the question of the proper rent level and a possible overcharge, and distinguished this case from its prior holdings which precluded challenges to rental adjustments made more than three years prior to the overcharge claim. Permitting a challenge to the $250 rent level, the RHC concluded that Majerle's last perfected rent ceiling was $228 per month, an amount contained in and dating back to William Bailey's September 1, 1987 defective, but untimely challenged,

9. The RHC discussed the following decisions: *Washington v. H.G. Smithy Co.,* TP 23,370 (RHC May 14, 1998); *Emes v. Campbell,* TP 23,258 (RHC Oct. 23, 1996); *Jenkins v. Johnson,* TP 23,410 (RHC Jan. 4, 1995); *Chin Kim v. Woodley,* TP 23,260 (RHC Sept. 13, 1994); *Peerless Properties v. Hashim,* TP 21,159 (RHC Oct. 26, 1992); *Williams & White v. Alvin Aubinoe, Inc.,* TP 22,821 & 22,814 (RHC Aug. 12, 1992); *Washington Realty Co. v. 3030 30th St. Tenant Ass'n,* TP 20,749 (RHC Jan. 20, 1991); *Ayers v. Landow,* TP 21,273 (RHC Oct. 4, 1990); *Sendar v. Burke,* HP 20,213 & TP 20,772 (RHC Apr. 6, 1988); *Borger Mgmt., Inc. v. Godfrey,* TP 20,116 (RHC Sept. 4, 1987).

10. An increase of general applicability is one the RHC authorizes, on an annual basis, and one the housing provider may elect to institute pursuant to procedures articulated in D.C.Code § 42–3502.06(b)(c) (2002) (formerly 45–2516(b)(c)). To effectuate the increase, the housing provider must file a proper certificate with the RHC.

filing.[11] The RHC further asserted that the July 1, 1991 rent adjustment was not a decrease from $250 to $240 per month, as Majerle had characterized it, but rather an attempted increase in the monthly rent from $228 to $240. As such an increase, it was not effective because, at the time Majerle sought to implement it, the property was not properly registered.

Majerle appeals from this March 26, 2002 RHC decision and order and continues to argue that the Act's statute of limitations, D.C.Code § 45–2516(e), bars Redmond's claim for a rent refund. Majerle claims that the RHC's holding to the contrary remains inconsistent both with our earlier decision in *Kennedy, supra,* 709 A.2d at 94, and with a number of prior RHC decisions, most principally the RHC's decision in *Chin Kim v. Woodley, supra* note 9, TP 23,260. Majerle argues that if a certain rent has been charged for three years, no overcharge claim can be made with respect thereto on the ground that the housing provider prior to that three-year period had failed in some manner to comply with the Act in order to make that rent amount lawful under it. In other words, the RHC books close, so to speak, after each three year period and any prior adjustments that might make unlawful the rent charged within the three-year period become irrelevant. With respect to the facts of this case, Majerle argues that the general principle applying to the limitations provision is not affected by the adjustment of general applicability notice or filing in May and July of 1991.

## II. Analysis

▉▉▉ When reviewing an agency interpretation of a statute it administers, such as the Act's limitations provision at issue here, we ordinarily give considerable deference to such an interpretation as well as to the agency's own regulations and decisions. *See, e.g., Springer v. D.C. Dep't of Employment Servs.,* 743 A.2d 1213, 1218 (D.C.1999); *Long v. D.C. Dep't of Employment Servs.,* 717 A.2d 329, 331 (D.C.1998). Our deference reflects the statutory authority entrusted to an agency to regulate a certain sphere of public activity and the notion that an agency's experience and expertise will produce a pattern of reasonably consistent decisions concerning questions that arise within its jurisdiction. *ABC, Inc. v. D.C. Dep't of Employment Servs.,* 822 A.2d 1085, 1088–89 (D.C.2003). We engage, therefore, in a limited review of administrative agency decisions, deferring to them so long as they flow rationally from the facts and are supported by substantial evidence. *Id.* at 1089. We similarly defer to an administrative agency's interpretation of a statute it administers "if it is reasonable and not plainly wrong or inconsistent with its legislative purpose." *Hotel Tabard Inn v. D.C. Dept. of Consumer & Regulatory Affairs,* 747 A.2d 1168, 1174 (D.C.2000) (citations and internal quotation marks omitted); *Kennedy, supra,* 709 A.2d at 97. *See also ABC, Inc.,* 822 A.2d at 1089. With these general principles in mind we turn to the appeal before us.

## A.

We first address the threshold question whether Redmond's claim would have been timely if no rent adjustment had been sought or no acknowledgment of a different rent ceiling had been made by Majerle between the time it raised the rent to $250

---

11. See *supra* note 2. Even though defective, this adjustment could not be challenged under the holding in *Kennedy.*

and the time, more than three years later, that Redmond filed her claim.

D.C.Code § 45–2516(e) provides (emphasis added):

A tenant may challenge a rent adjustment implemented under any section of this chapter by filing a petition with the Rent Administrator under § 45–2526. *No petition may be filed with respect to any rent adjustment, under any section of this chapter, more than 3 years after the effective date of the adjustment,* except that a tenant must challenge the new base rent as provided in § 45–2503(4) within 6 months from the date the housing provider files his base rent as required by this chapter.

In our *Kennedy* decision, we set forth the background to the present wording of this provision. In *McCulloch v. D.C. Rental Accommodations Comm'n,* 449 A.2d 1072 (D.C.1982), we held that a petition that challenged a rent increase made more than three years prior to the filing of the claim was timely filed. We did so on the basis that "with each rental payment that is illegally charged, a new cause of action will arise." *Id.* at 1073. The 1985 Act, however, overturned this general principle in its provision italicized above.

Following the enactment of the new limitations provision, the RHC broadly precluded challenges brought to rentals that have been imposed for a period of more than three years, a position we sustained in *Kennedy.*[12] In *Kennedy,* we endorsed the interpretation of § 45–2516(e) the RHC then advanced to us with regard to this issue by noting that "the very purpose of the new statute of limitations period in § 45–2516(e) was to . . . prohibit petitions

against *rent levels* put in place more than three years prior to the petitions' filing." 709 A.2d at 97 (emphasis added). In *Kennedy,* we also cited with approval the RHC's *Chin Kim* decision for the proposition, which again the RHC was then advancing to us, that "[t]enants must file any challenge to *any* type of rent adjustment within three years after the adjustment takes effect." *Id.* (quoting *Chin Kim,* TP 23, 260 at 71) (emphasis added). In *Chin Kim,* the rent had been increased from $100 to $350 a month in 1983, which the tenant kept paying until 1987, at which time the housing provider increased the rent to $420 per month. TP 23,260 at 69. In 1993, the tenant filed a petition alleging that the housing provider had collected rent that exceeded the lawful rent ceiling of $100 per month. The RHC held that, because "[tenant] did not timely challenge the rent increases of $350 and $420 . . . the increases became effective." *Id.* at 70. The RHC then concluded that, because the tenant failed to file a petition challenging either rent increase until February 1993, her petition was barred and she was precluded from collecting any refund for the rent overcharges. *Id.* at 72. *Kennedy* and *Chin Kim,* therefore, both stand for the proposition that Majerle's September 1, 1989 rent increase would ordinarily become immune to overcharge claims because Redmond failed to challenge it within three years from its effective date. We do not understand the RHC to be retreating from this general position in the order under review.

Corporation Counsel in its brief to us makes the sweeping assertion that such a position ignores the phrase "under any

12. The purpose of the broad reading, as we noted in *Kennedy,* was to lessen the administrative quagmire for both the agency and relevant parties stemming from a need, in response to a tenant petition claiming illegal rent ceilings and rents, to conduct a rent ceiling analysis of all prior years to arrive at the present ceiling. *Id.* at 97 (quotations omitted).

section of this chapter," and suggests that an unsuccessful attempt to comply with the statute, as in *Kennedy*, is different from a complete failure to comply at all and that under a broad interpretation, as the tenant argued in *Kennedy* "all prior rent ceilings and rent levels, however outlandish and violative of the rent control laws, are rendered valid." 709 A.2d at 99. In *Kennedy*, we noted that the position was not without some force in the abstract. Nonetheless, once the possibility is opened that actions taken prior to an uninterrupted three-year period may be examined, the repose that the 1985 amendment sought is put in doubt for the reasons we discussed in *Kennedy* and which the RHC has reflected in its decisions.[13]

### B.

■ The question then arises whether the facts of this case justify a different result here. The RHC in its March 2002 decision asserted that in this case, it encountered "a unique set of facts that were not found in its prior decisions." It stated that in prior holdings, it did not "pass upon the peculiar facts and the precise question" presented here. The RHC focused on the following two facts, which it concluded set this case apart from both *Kennedy* and its prior limitations decisions: (1) Majerle filed a rent adjustment in July 1991 that fell within the three year period following the imposition of its rent increase to $250 per month and, therefore, opened for reexamination the validity of that prior in-

crease and (2) Majerle admitted in a May 31, 1991 tenant notice for a rent increase of general applicability, in its certificate of election of adjustment of general applicability filed with the RACD on July 1, 1991,[14] and in testimony before the RACD that the rent ceiling for Redmond's unit was $228 per month.

With regard to its first noted factual distinction, the RHC cited *Jenkins* to support the proposition that challenges to subsequent adjustments implemented within the three-year limitations period are not barred, even if those adjustments follow earlier ones made prior to that statutory period. In *Jenkins*, the tenant filed a petition on July 9, 1993, challenging several rent adjustments the housing provider implemented between November 6, 1985 and June 8, 1993 and seeking, among other relief, a rent refund for overcharges stemming from those adjustments. TP 23,410 at 5–6, 9 & n. 7. Although most of the challenged adjustments were made outside the three year limitations period, three such adjustments were implemented within that statutory period that ran from July 9, 1990 to July 9, 1993, and had the cumulative effect of increasing the tenant's rent from $374 to $416 per month. The RHC held that the tenant could not challenge those rent increases implemented prior to July 9, 1990, but permitted the tenant to challenge any rent adjustments made from that date through the time the tenant petition was filed. *Id.* at 9. In its March 2002

---

13. We address here only the question of the housing provider's potentially trebled liability for overcharges. It does not necessarily follow that the level of rent charged for a three-year period without challenge becomes, prospectively, the new authorized rent ceiling, with respect to which the RHC might perhaps consider it could be guided by its own record of filings as a general practice. However, in the particular base before us, the RHC did not decide this precise issue nor need we.

14. Majerle contends that the RHC engaged in impermissible fact-finding when it took notice of the housing provider's July 1991 filing. We have, however, held that an administrative agency may take judicial notice of its own records, including as here the housing provider's filing. *See, e.g., Renard v. D.C. Dep't of Employment Servs.*, 673 A.2d 1274, 1276 (D.C.1996).

decision and order, the RHC explained that *Jenkins* permitted Redmond's challenge to the July 1991 rent adjustment, even if Redmond would have been barred from challenging the earlier September 1989 rent increase under the limitations provision.

■ The RHC's analysis of its *Jenkins* holding appears to conflate two different limitation periods—namely the requirement that a tenant challenge a housing provider's filing of an adjustment within three years and the requirement that a tenant's rent refund be limited to three years prior to the date on which the tenant files a petition. *Jenkins* did not permit a reexamination of rent levels established outside the three year limitations period or allow damages for rent overcharges more than three years prior to the filing of the tenant petition. Indeed, such a reading would be contrary to the central premise of our *Kennedy*[15] decision-namely, that the validity of a rental ceiling depends on the propriety of periodic adjustments that a landlord takes, which is a matter within § 45–2516(e)'s purview and that challenges to rent adjustments are subject to § 45–2516(e)'s three-year limitations period. 709 A.2d at 100. As a result, we do not think that this case can rest solely on the fact that a subsequent adjustment was made during the three-year limitations period.

However, there was far more in the record here. The RHC was quite justified in focusing on Majerle's various admissions that the rent ceiling for Redmond's unit was $228 as a factor that distinguishes this case from both our decision in *Kennedy* and its *Chin Kim* ruling. Majerle does not contest that it sent a notice to Redmond in May 31, 1991 in which it stated that the legal rent ceiling for her unit was $228 per month and that Redmond previously may have been overcharged. Nor does Majerle contest that the certificate of election of adjustment of general applicability that it filed with the RACD in July 1991 indicated the rent ceiling for Redmond's unit was $228. In fact, Mr. Majerle testified at the RACD hearing that the legal rent ceiling was $228 per month at the time it executed its May 31, 1991 notice. Thus, within three years of its imposition, the housing provider, in effect, repudiated the validity of its $250 rent level previously imposed and explicitly acknowledged that the correct rent ceiling was that reflected by the records of the RACD itself.

The RHC could fairly conclude that it would be contrary to the purpose of the Act to accept Majerle's present contention that $250 became ipso facto the rent ceil-

---

**15.** In *Kennedy*, tenants brought a petition in April 1994 seeking rent refunds on the ground that the rent charged exceeded the lawful rent ceiling. 709 A.2d at 95. The tenants claimed that the housing provider had established unlawful rent ceilings and was charging them unlawful rents during the years 1991–1994. *Id.* The tenants claimed that the housing provider, in 1986, made a rent ceiling filing that overstated the then permissible rent ceiling and that this overstatement became the basis for subsequent rent ceiling overstatements and subsequent surcharges of rent. *Id.* We upheld the RHC's rejection of the tenants' challenge, noting that "[u]ltimately, the validi-ty of the ceiling depends on the propriety of the periodic adjustments taken by the landlord, a matter squarely within the purview of § 45–2516(e)." *Id.* at 99. We further held that, "[n]o petition may be filed with respect to any rent adjustment ... more than 3 years after the effective date of the adjustment." *Id.* Indeed, we stated that § 45–2516(e), "as with any other statute of limitations provision, places a burden on the party seeking relief to be vigilant in the protection of its own interests; that party must bring its action in a timely fashion or run the risk of forfeiting the opportunity to obtain redress." *Id.*

ing upon Redmond's failure to challenge that rent level within three years when less than one year prior to Redmond's petition Majerle explicitly asserted both that the rent ceiling for Redmond's unit was not $250 per month but was, in fact, $228 per month and that rent amounts Majerle charged Redmond in excess of this $228 ceiling "may have been [an] over-charge[ ]" and, furthermore, itself sought an adjustment to that acknowledged rent ceiling. See D.C.Code § 42–3501.02 (2002) (noting the Act seeks, in part, "to protect low-and moderate-income tenants from the erosion of their income from increased housing costs"). Such a conclusion seems especially warranted when, as here, Redmond wrote to Majerle as early as November 1990 requesting an explanation from it as to why the $250 in monthly rent Majerle was charging her did not exceed the lawful rent ceiling on record at the RACD.[16]

Majerle argues that the RHC in Emes, supra note 9, TP 23,258, held that admissions such as the ones made here may not be considered for purposes of evaluating limitations claims. The facts of Emes, however, are quite distinct from this case. In Emes, the tenant filed her petition on February 12, 1993 alleging, in part, that the housing provider had failed to file the proper rent increase forms and that the charged rent exceeded the lawful ceiling. TP 23,258 at 2. The tenant first took occupancy of the subject unit in 1988, at which time her rent was $1,325 per month. Id. Her rent was subsequently increased to $1,385 early in 1990, to $1,425 in April 1990, and again to $1,435 in March 1992. Registration forms filed with the RACD in September 1985 listed the rent ceiling for

the unit at $2,151. In 1988, when the tenant assumed occupancy of her unit, the rent ceiling was listed at $3,198. The housing provider's RACD filings in 1989 and 1990 listed the rent ceiling at $3,345 and $4,342 respectively. Despite these filings, the housing provider had testified at the RACD hearing that in April 1985, the rent ceiling for the tenant's unit was $995 and that, at no point during the tenant's occupancy of the unit, did he either adjust the ceiling or charge in excess of it. Id. The RHC held that the tenant failed to prove, in light of the RACD record, that she was charged rent in excess of the rent ceiling. The RHC rejected the housing provider's testimony because it related to filings made in 1985, which were held to be outside the limitations period.

Unlike the admissions in Emes, Majerle's admissions include those made within RACD filings, filings which Majerle submitted within less than one year of Redmond's petition. Both the May 31, 1991 notice Majerle sent to Redmond and its subsequent July 1, 1991 filing establish that, as of July 1, 1991, the rent ceiling was then $228 and, implicitly, that Redmond had been overcharged rent previously.[17] The admissions here directly refute Majerle's limitations defense, namely that when it charged $250 in rent, it viewed that rent level as a de facto rent ceiling unless otherwise challenged in a timely manner. In other words, the admissions reflected Majerle's representations to the RACD in 1991 and, therefore, no re-examination of the correctness of RACD records outside three years was required to conclude that $228 was the rent ceiling for the duration of the relevant limitations period.

16. Redmond also wrote a follow-up letter to prompt Majerle to take some action with regard to her November 1990 letter on February 4, 1991.

17. No argument is made to us that Majerle's liability for rental overcharges should be limited to the period after July 1, 1991. See note 13, supra.

We, thus, cannot fault the RHC's conclusion that this case represents a unique factual scenario distinct from that implicated in our *Kennedy* decision as well as from its own *Chin Kim* decision. The presence of Majerle's admissions, including admissions contained in the RACD record, also make this case distinct from those Majerle and amicus cited to us in their petitions for rehearing or rehearing en banc, none of which include a subsequent filing within the relevant period in which the validity of a prior rent level is undermined by an admission within the relevant period as to the proper rent ceiling. See *supra* note 9 (listing cases).

Having fulfilled our mandate to provide a clear explanation for its decision in this case and to distinguish its prior holdings,[18] the RHC's March 2002 decision sustaining the imposition of sanctions for rental over-charges is

*Affirmed.*

18. We decline to re-examine on this second appeal any questions relating to the imposition of treble damages or other arguments outside the scope of the limited remand.